# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SHADITH ABDUL WILLIAMS,     Plaintiff, | : : : | |
| v. | : : | CIVIL ACTION NO. 21-CV-3426 |
| MICHAEL LACSON, ESQ., *et al.*,     Defendants. | : : : | |

## MEMORANDUM

**TUCKER, J.**                                                                                          **OCTOBER 7, 2021**

Shadith Abdul Williams, a pretrial detainee at Bucks County Prison ("BCP"), filed this *pro se* civil action using the Court's preprinted form Complaint for use by prisoners alleging constitutional claims pursuant to 42 U.S.C. § 1983. Williams also attached a handwritten Complaint to the form. Named as the Defendants are Michael Lacson, Esq., BCP Deputy Warden Kelly Reed, and the Bucks County Office of Public Defenders ("BCOPD")[1]. Lacson is named in his individual and official capacities while Reed and the BCOPD are named in their official capacities only. Williams also seeks to proceed *in forma pauperis*. For the reasons that follow, the application to proceed *in forma pauperis* will be granted and Williams's Complaint will be dismissed in part with prejudice and in part without prejudice.

## I.     FACTUAL ALLEGATIONS

Williams alleges that on January 27, 2021, he received a phone call from Defendant Lacson, his public defender in his criminal case. (ECF No. 2 at 14.)[2] Lacson told Williams that

---

[1] While Williams included BCOPD in the list of Defendants on the form Complaint, he did not list BCOPD as a Defendant on the handwritten portion. (*See* ECF No. 2 at 3, 13.) Construing his pleading liberally, the Court will treat BCOPD as a named Defendant.

[2] The Court adopts the pagination supplied by the CM/ECF docketing system.

he needed to send Williams copies of pretrial documents but was unclear on the protocol for doing so during the COVID-19 pandemic.  (*Id*.)  Williams gave Lacson the name of his case manager, W. Siani, and his block and cell information.  (*Id*.)  Shortly after the phone call, Williams spoke with Siani, who told Williams that he had received an email from Lacson containing the documents.  (*Id*. at 15.)  Siani told him he would print out the documents for him.  (*Id*.)  Later, Siani came to Williams's cell to let Williams know that his supervisor, Defendant Reed, had intercepted him, read the documents, and took possession of them until she could determine whether it was okay for attorneys to email documents to inmates.  (*Id*.)  Williams was told that the proper procedure was for attorneys to mail legal documents through the Postal Service or hand deliver them to the institution.  (*Id*. at 16.)  Two days later, Siani told Williams that Reed shredded the documents because she concluded that attorneys were not permitted to email confidential legal materials to case managers to give to inmates.  (*Id*. at 16-17.)  Siani told Williams that attorneys must hand deliver legal materials or send them marked as legal mail.  (*Id*. at 17.)

Following this incident, Williams sought to replace Lacson as his attorney on the ground that he had violated the attorney confidentiality requirement.  (*Id*.)  Thereafter, the BCOPD filed a motion with the Bucks County Court of Common Pleas where Williams's charges were pending, notifying the Court that it had a conflict representing Williams.  (*Id*. at 17-18.)  He alleges he has not received new counsel.  (*Id.* at 19.)  Finally, Williams asserts that on July 11, 2021, some six months after the incident with the documents, he was threatened by Defendant Reed that "if I filed against her 'nothing would be done & I would regret it."  (*Id*.)  He provides no other context for the alleged threat.

Williams asserts a claim against Lacson that he breached the attorney-client confidentiality by emailing documents to the institution, which permitted Reed to view and

destroy them. (*Id*. at 19-20.) He asserts a constitutional claim against Reed that she was "unprofessional and careless" in intercepting the documents, holding them, and later destroying them, and used her position "to gain control of the misconduct acts of her fellow employee W. Siani." (*Id*. at 20.) He also asserts a retaliation claim. (*Id*.) He seeks injunctive relief to prevent Lacson and Reed from violating his constitutional rights "and stop further threats, punishments from [Reed] for filing proper action against the two." (*Id*. at 20-21.) He also seeks appointment of new counsel in his criminal case and money damages of $3,000 from Lacson. (*Id*. at 21.)

Attached to the Complaint is a letter addressed to Williams from BCOPD Chief Public Defender John R. Fagan dated May 28, 2021 informing him that the BCOPD had filed a conflict petition in his criminal case. (ECF No. 2-1.) The letter notes that Fagan attempted to speak with Williams at BCP, but Williams refused to meet him. A review of public records indicates that Williams was charged with drug offenses on August 14, 2020. *See Commonwealth v. Williams*, CP-09-CR-0004718-2020 (C.P. Bucks). On May 25, 2021, the BCOPD filed a motion for appointment of new counsel for Williams. The motion was granted by order filed on May 28, 2021. On June 3, 2021, Attorney Keith J. Williams entered his appearance for Williams, and continues to represent him as his court appointed private counsel. (*Id.*)

## II.   STANDARD OF REVIEW

The Court grants Williams leave to proceed *in forma pauperis* since he appears unable to pay the filing fee for this case.[3] Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) applies, which requires the Court to dismiss the Complaint if it fails to state a claim. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184

---

[3] However, as Williams is a prisoner, he will be obligated to pay the filing fee in installments in accordance with the Prison Litigation Reform Act. *See* 28 U.S.C. § 1915(b).

F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted); *Shorter v. United States*, No. 20-2554, 2021 WL 3891552, at *5 (3d Cir. Sept. 1, 2021) ("'At this early stage of the litigation,' '[the Court will] accept the facts alleged in [the *pro se*] complaint as true,' 'draw[] all reasonable inferences in [the plaintiff's] favor,' and 'ask only whether [that] complaint, liberally construed, . . . contains facts sufficient to state a plausible [] claim.'" (quoting *Perez v. Fenoglio*, 792 F.3d 768, 774, 782 (7th Cir. 2015)). Conclusory allegations do not suffice. *Iqbal*, 556 U.S. at 678. As Williams is proceeding *pro se*, the Court construes his allegations liberally. *Vogt v. Wetzel*, 8 F. 4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)).

### III.   DISCUSSION

#### A.   Claims Against Attorney Lacson and the BCOPD

Williams alleges a constitutional claim and a state law claim that Attorney Lacson violated his attorney-client confidentiality by emailing legal documents to BCP rather than following the procedure of sending them through the Postal Service marked as legal mail or hand delivering them. Although not entirely clear, the Court also understands Williams to allege that the BCOPD either violated his rights by filing the conflict petition with the state court, or is liable as Lacson's employer. To the extent Williams seeks to assert federal constitutional claims against Lacson and BCOPD, the claims must be dismissed under 28 U.S.C. § 1915(e)(2)(B).

The vehicle by which federal constitutional claims may be brought in federal court is Section 1983 of Title 42 of the United States Code, that provides in part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction

> thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.  "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."  *West v. Atkins*, 487 U.S. 42, 48 (1988).

Williams alleges that Lacson was his public defender.  "[A] public defender does not act under color of state law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding."  *Polk Cty. v. Dodson*, 454 U.S. 312, 325 (1981) (footnote omitted).  "Attorneys performing their traditional functions will not be considered state actors solely on the basis of their position as officers of the court."  *Angelico v. Lehigh Valley Hosp., Inc.*, 184 F.3d 268, 277 (3d Cir. 1999).  Moreover, because public defenders are not state actors when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding, *Dodson*, 454 U.S. at 325, so too their employing entities, *i.e.*, public defender's offices, have been treated similarly in this context.  *See Dorn v. Aguilar*, 645 F. App'x 114, 115 (3d Cir. 2016) (*per curiam*) ("As explained by the District Court, Dorn did not state a claim for relief against his public defender and the public defender's office because neither is a state actor for purposes of § 1983."); *see also Gannaway v. PrimeCare Med., Inc*, 652 F. App'x 91, 95 (3d Cir. 2016) (*per curiam*) ("We also conclude that the District Court properly granted summary judgment to the defendants on Gannaway's claims against the Berks County Public Defender's Office and the appointed lawyers who represented him in criminal proceedings" (citing *Dodson*)).  Because Lacson was acting in his capacity as Williams's lawyer when he

emailed the documents to BCP, neither he nor BCOPD may be held liable as "state actors" under § 1983 and the federal constitutional claims against them must be dismissed.[4]

Because the Court has dismissed Williams federal claims against Lacson and the BCOPD, the Court will not exercise supplemental jurisdiction under 28 U.S.C. § 1367(c) over any state law claims. Accordingly, the only independent basis for jurisdiction over any such claims is 28 U.S.C. § 1332(a), which grants a district court jurisdiction over a case in which "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States."

Section 1332(a) requires "'complete diversity between all plaintiffs and all defendants,' even though only minimal diversity is constitutionally required. This means that, unless there is some other basis for jurisdiction, 'no plaintiff [may] be a citizen of the same state as any defendant.'" *Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 104 (3d Cir. 2015) (quoting *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 89 (2005) and *Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 419 (3d Cir. 2010) (internal footnotes omitted)). An individual is a citizen of the state where he is domiciled, meaning the state where he is physically present and intends to remain. *See Washington v. Hovensa LLC*, 652 F.3d 340, 344 (3d Cir. 2011). "[T]he domicile of a prisoner before his imprisonment presumptively remains his domicile during his imprisonment." *Pierro v. Kugel*, 386 F. App'x 308, 309 (3d Cir. 2010). It is the plaintiff's burden to establish diversity of citizenship, *see Gibbs v. Buck*, 307 U.S. 66, 72

---

[4] To the extent Williams seeks as relief in his case that this Court appoint new counsel in his criminal case in Bucks County, that request for relief is not plausible. The state court docket shows that he has been appointed new counsel to replace Lacson. More importantly, this Court has no authority to intervene in a pending state court criminal matter and would have to abstain from taking such action. *See Younger v. Harris*, 401 U.S. 37, 43-44 (1971); *Duran v. Weeks*, 399 F. App'x 756, 758–59 (3d Cir. 2010) (*per curiam*) ("Since Duran's section 1983 action seeking to enjoin his criminal prosecution presents the classic case for *Younger* abstention, the District Court's dismissal of Duran's complaint on that basis was clearly appropriate.").

(1939); *Quaker State Dyeing & Finishing Co., Inc. v. ITT Terryphone Corp.*, 461 F.2d 1140, 1143 (3d Cir. 1972) (stating that, in diversity cases, the plaintiff must demonstrate complete diversity between the parties and that the amount in controversy requirement has been met); *Jackson v. Rosen*, Civ. A. No. 20-2842, 2020 WL 3498131, at *8 (E.D. Pa. June 26, 2020).

Williams does not allege the citizenship of the parties. Rather, he provides only the address of BCP for himself and Pennsylvania addresses for the Defendants, which suggests that he and some, if not all, of the Defendants may be Pennsylvania citizens. Accordingly, he has not sufficiently alleged that the parties are diverse for purposes of establishing the Court's jurisdiction over any state law claims he intends to pursue. Moreover, Williams has not alleged the necessary amount in controversy for bringing diversity jurisdiction claims. "As a general rule, [the amount in controversy] is determined from the good faith allegations appearing on the face of the complaint." *Spectacor Mgmt. Gp. v. Brown*, 131 F.3d 120, 122 (3d Cir. 1997). "The sum claimed by the plaintiff controls if the claim is apparently made in good faith. It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal." *Dardovitch v. Haltzman*, 190 F.3d 125, 135 (3d Cir. 1999) (quotations omitted). As Williams demands only $3,000 in money damages, diversity jurisdiction does not attain for this reason as well.

### B.     Claims Against Reed

Williams asserts claims against Reed, a Bucks County employee, in her official capacity based on her reading and then shredding the pretrial documents and making an alleged threat to retaliate against him.[5] Claims against Bucks County officials named in their official capacity are

---

[5] A claim that a prison official read and shredded a pretrial detainee's attorney/client documents would be analyzed as a Sixth Amendment claim based on interference with the right to counsel. With respect to interference with attorney contact with clients, "[t]he Supreme Court [has] held that 'inmates must have a reasonable opportunity to seek and receive the assistance of

7

indistinguishable from claims against Bucks County. *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) ("Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'") (quoting *Monell v. N.Y.C. Dept. of Soc. Servs.*, 436 U.S. 658, 690, n. 55 (1978)). "[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Id.* Thus, the official capacity claim must be analyzed under the law governing municipal liability.

To plead a basis for municipal liability under § 1983, a plaintiff must allege that the municipality's policy or custom caused the violation of his constitutional rights. *See Monell*, 436 U.S. at 694. "To satisfy the pleading standard, [the plaintiff] must . . . specify what exactly that custom or policy was." *McTernan v. City of York, PA*, 564 F.3d 636, 658 (3d Cir. 2009).

---

attorneys' and that [prison] '[r]egulations and practices that unjustifiably obstruct the availability of professional representation . . . are invalid.'" *Benjamin v. Fraser*, 264 F.3d 175, 184 (2d Cir. 2001)) (fourth alteration in original) (quoting *Procunier v. Martinez*, 416 U.S. 396, 419 (1974)). Thus, where an institutional restriction impedes a pretrial detainee's access to criminal counsel, "'the practice must be evaluated in the light of the central objective of prison administration, safeguarding institutional security.'" *Id.* at 187 (quoting *Bell*, 441 U.S. at 547). A prison regulation restricting a pretrial detainee's contact with his attorney will be unconstitutional where it "'unreasonably burden[s] the inmate's opportunity to consult with his attorney and to prepare his defense.'" *Id.* (quoting *Wolfish v. Levi*, 573 F.2d 118, 133 (2d Cir. 1978)).

Notably, unlike a First Amendment access to the courts claim, a claim of unreasonable interference with Sixth Amendment right to counsel does not require a showing of actual injury. *See Benjamin*, 264 F.3d at 185 (pretrial detainee has standing to assert unreasonable interference with Sixth Amendment right even if the interference did not result in "actual injury"). Although the United States Court of Appeals for the Third Circuit has not ruled on this issue in a published opinion, the Court has noted that a district court had failed to address a prisoner's Sixth Amendment interference with right to counsel claim and disagreed with the district court's implicit conclusion that the claim required a showing of actual injury. *Prater v. City of Philadelphia*, 542 F. App'x 135, 138 n.5 (3d Cir. 2013) (*per curiam*) (affirming in part on alternate basis) (citing *Benjamin*, 264 F.3d at 185).

In order to state a plausible First Amendment retaliation claim, a prisoner must allege that: (1) he engaged in constitutionally protected conduct; (2) he suffered an adverse action sufficient to deter a person of ordinary firmness from exercising his constitutional rights; and (3) the constitutionally protected conduct was "a substantial or motivating factor" for the adverse action. *See Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001); *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003); *Coit v. Garman*, 812 F. App'x 83, 86 (3d Cir. 2020) (*per curiam*).

8

"'Policy is made when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict.'" *Estate of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) (quoting *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990)). "'Custom, on the other hand, can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law.'" *Id.* (quoting *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990)). For a custom to be the proximate cause of an injury, a plaintiff must establish that the Defendant "had knowledge of similar unlawful conduct in the past, failed to take precautions against future violations, and that its failure, at least in part, led to [plaintiff's] injury." *Id.* (internal quotations and alterations omitted).

Williams has failed to make any policy or custom allegations to support an official capacity claim against Reed/municipal claim against Bucks County. Accordingly, this claim against Reed must be dismissed pursuant to § 1915(e)(2)(B) because it is not plausible. However, because the Court cannot say at this time that Williams can never state an official capacity/municipal claim against Bucks County, or a claim against Reed in her individual capacity, the dismissal will be without prejudice and Williams will be granted an opportunity to file an amended complaint if he is capable of curing these defects.

## IV. CONCLUSION

For the reasons stated, Williams's federal constitutional claims against Defendants Lacson and BCOPD will be dismissed with prejudice and his state law claims will be dismissed without prejudice for lack of subject matter jurisdiction. His official capacity claim against Defendant Reed will be dismissed without prejudice. Williams may file an amended complaint to attempt to cure the defects the Court has identified in the claim against Reed dismissed

without prejudice.[6]  An appropriate Order follows containing additional information about amendment.

                                                 BY THE COURT:

                                                 /s/Petrese B. Tucker

                                                 **PETRESE B. TUCKER, J.**

---

[6] Williams may also assert his state law claims in an appropriate state court.